UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

TIMOTHY CLARK                                  CIVIL ACTION NO. 6:14-cv-02341

VERSUS                                         JUDGE DOHERTY

U.S. COMMISSIONER                              MAGISTRATE JUDGE HANNA
SOCIAL SECURITY
ADMINISTRATION


# REPORT  AND  RECOMMENDATION


Before the Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be reversed and remanded

for further consideration consistent with this report and recommendation.

## ADMINISTRATIVE  PROCEEDINGS

The claimant, Timothy Clark, fully exhausted his administrative remedies prior

to filing this action in federal court.  Mr. Clark filed an application for SSI benefits,[1]

alleging disability beginning on January 1, 2001.[2]  His application was denied.[3]  Mr.

---

[1]     The application summary indicates that the application was filed on July 10, 2012
(Rec. Doc. 8-1 at 89) but the disability examiner and the ALJ stated that the application date was
June 25, 2012 (Rec. Docs. 8-1 at 18, 28).

[2]     Rec. Doc. 8-1 at 89.

[3]     Rec. Doc. 8-1 at 28.

Clark requested a hearing,[4] which was held on July 3, 2013 before Administrative Law Judge Carol Lynn Latham.[5]  The ALJ issued a decision on August 20, 2013,[6] concluding that Mr. Clark was not disabled with the meaning of the Social Security Act ("the Act") from June 25, 2012 through the date of the decision.  Mr. Clark asked for review of the decision, but the Appeals Council concluded on February 28, 2014 that no basis existed for review of the ALJ's decision.[7]  Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g).  Mr. Clark then filed this action seeking review of the Commissioner's decision on July 18, 2014.

## FACTUAL BACKGROUND

Mr. Clark was born on September 17, 1960.[8]  At the time of the ALJ's decision, he was fifty-one years old.  He has an associates' degree in electronics technology[9] and past relevant work experience as a utility line locator.[10]  He alleges that he has

---

[4]     Rec. Doc. 8-1 at 43.

[5]     The hearing transcript is found at Rec. Doc. 8-1 at 73-88.

[6]     Rec. Doc. 8-1 at 18-24.

[7]     Rec. Doc. 8-1 at 6-8.

[8]     Rec. Doc. 8-1 at 89.

[9]     Rec. Doc. 8-1 at 78.

[10]    Rec. Doc. 8-1 at 154.

been disabled since January 1, 2001.[11]  He complains of chronic pain, including back pain, neck pain, and a headache that has lasted for several years.[12]

The record contains very little documentation of Mr. Clark's medical diagnoses or treatment history.  Therefore, the following factual recapitulation is based primarily on the information set forth in Mr. Clark's brief.

Mr. Clark alleges that he injured his back in an automobile accident in November 1999.  He alleges that he was treated conservatively with pain medication and physical therapy, was out of work for approximately two months, returned to work as a utility line locator on a part time basis, then went back to work full time, while continuing to treat his injury but also continuing to experience back pain.  He alleges that he then stopped working and collected workers' compensation for a while.  In August 2001, his employer allegedly asked him to try to return to work.  He contends that he returned to work but by October 2001 felt that he could not continue performing the job.  In December 2001, he allegedly was required to go through a functional capacity evaluation ("FCE"), which showed that he could no longer perform the job.  During that evaluation, a headache allegedly started, and Mr. Clark contends that the headache has not resolved since that date.  After the FCE, Mr. Clark

---

[11]    Rec. Doc. 8-1 at 89.

[12]    Rec. Doc. 8-1 at 106.

allegedly continued to see physicians who prescribed medications, physical therapy, and injections to his back, neck, and head.  He also underwent neck surgery in December 2002.

In 2011 and 2012, Mr. Clark saw a chiropractor for a series of spinal adjustments, which allegedly provided some pain relief but did not completely resolve Mr. Clark's pain complaints.   Mr. Clark stated that he discontinued chiropractic treatment because he could not pay for it.

At the time of the hearing, Mr. Clark was not seeing any physicians or taking any prescription medications because he allegedly could not afford it.  He also contends that he stopped seeking treatment at the LSU Medical Center in Lafayette, Louisiana because of an unpleasant experience with a doctor who did not want to treat a new patient with chronic pain complaints.  Mr. Clark was scheduled to see a neurologist at the LSU health center in New Orleans in February 2015 but is daunted by the travel requirement and anticipated wait times.

Mr. Clark contends that he previously applied for SSI, was found to be disabled in May 2011, but was not permitted to collect SSI payments because he was receiving settlement payments attributable to his father's having been diagnosed with and dying from mesothelioma.  He claims that when he exhausted his funds and returned to the Social Security Administration to start receiving SSI payments in June 2012, he was

told that his case had been terminated because more than a year had elapsed between the determination that he was disabled and the payment of SSI benefits.  He therefore filed a new application for SSI, which is the application now before the court.

## ANALYSIS

### A.   STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[13] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[15]

---

[13]     *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[14]     *Villa v. Sullivan*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[15]     *Hames v. Heckler*, 707 F.2d at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[16]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[17]  Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts.[18]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[19]

**B.    Entitlement to Benefits**

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is  determined to be disabled is eligible to

---

[16]     42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[17]     *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1021; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d at 135; *Boyd v. Apfel,* 239 F.3d at 704.

[18]     *Martinez v. Chater*, 64 F.3d at 174.

[19]     *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez v. Chater*, 64 F.3d at 174.

receive Supplemental Security Income ("SSI") benefits.[20]  The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[21]  A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[22]

## C.    <u>Evaluation Process and Burden of Proof</u>

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  At step one, an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings. At step two, an individual who does not have a severe impairment will not be found

---

[20]       42 U.S.C. § 1382(a)(1) & (2).

[21]       42 U.S.C. § 1382c(a)(3)(A).

[22]       42 U.S.C. § 1382c(a)(3)(B).

disabled.  At step three, an individual who meets or equals an impairment listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 will be considered disabled without consideration of vocational factors.  If an individual is capable of performing the work he has done in the past, a finding of not disabled will be made at step four. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity will be considered to determine if the claimant can perform any other work at step five.[23]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[24] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[25]  The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[26]

---

[23]        20 C.F.R. § 404.1520; see, e.g., *Wren v. Sullivan*, 925 F.2d at 125; *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[24]        20 C.F.R. § 404.1520(a)(4).

[25]        20 C.F.R. § 404.1545(a)(1).

[26]        20 C.F.R. § 404.1520(e).

-8-

The claimant bears the burden of proof on the first four steps.[27]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[28]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[29]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[30]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[31]

## D.   THE ALJ'S FINDINGS AND CONCLUSIONS

In this case, the ALJ reached his ultimate conclusion at step four of the evaluation process.  At step one, the ALJ determined that Mr. Clark has not engaged

---

[27]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[28]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[29]     *Fraga v. Bowen*, 810 F.2d at 1304.

[30]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[31]     *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

in substantial gainful activity since June 25, 2012.[32]  This finding is supported by the evidence in the record.

At step two, the ALJ found that Mr. Clark has the following severe impairments:  mild dextroscoliosis with moderate, diffuse spondylosis, anterior cervical fixation plate at the C5-C7 levels, and amputation of the second through fourth digits at the distal interphalangeal ("DIP") joint on the right hand.[33]  This finding is supported by evidence in the record.  The ALJ also found that "the claimant has no medically determinable impairment of headaches."[34]  The claimant challenges this finding.

At step three, the ALJ found that Mr. Clark has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment.[35] As will be discussed in greater detail below, the undersigned is unable to determine whether the Commissioner's conclusion at step three is based on substantial evidence.

---

[32]     Rec. Doc. 8-1 at 20.

[33]     Rec. Doc. 8-1 at 20.

[34]     Rec. Doc. 8-1 at 21.

[35]     Rec. Doc. 8-1 at 21.

At step four, the ALJ found that Mr. Clark is capable of performing his past relevant work as a utility line locator,[36] ending the evaluative process without reaching step five, and concluding that Mr. Clark is not disabled.  Mr. Clark challenges this finding.

### E.    THE ALLEGATIONS OF ERROR

Mr. Clark claims that the ALJ erred in determining that he was not under a disability as defined by the Act through the date of the decision and, therefore, not eligible for benefits.  In particular, Mr. Clark contends that the Commissioner's decision is not supported by substantial evidence and that the ALJ failed to apply the correct legal standards in reaching that decision.

### F.    THE ALJ FAILED TO PROPERLY EVALUATE WHETHER MR. CLARK'S IMPAIRMENTS MEET OR EQUAL A LISTING

The ALJ concluded that none of Mr. Clark's claimed impairments meet or equal a listing.  She reached this conclusion without identifying the listings she considered and without any comparison of Mr. Clark's symptoms or clinical findings with the criteria of any relevant listing.  This is insufficient.  An "ALJ is required to discuss the evidence and explain the basis for his findings at each unfavorable step

---

[36]     Rec. Doc. 8-1 at 24.

of the sequential evaluation process."[37]  In *Audler v. Astrue*, the ALJ, at step three of

the analysis:

> summarily concluded that "[t]he medical evidence
> indicates that the claimant has status post lumbar
> laminectomy, cervical disc herniation, headaches and
> chronic neck and back pain, impairments that are severe
> within the meaning of the Regulations but not severe
> enough to meet or medically equal one of the impairments
> listed in Appendix 1, Subpart P, Regulations No. 4."  The
> ALJ did not identify the listed impairment for which
> Audler's symptoms fail to qualify, nor did she provide any
> explanation as to how she reached the conclusion that
> Audler's symptoms are insufficiently severe to meet any
> listed impairment.[38]

The Fifth Circuit concluded that "[s]uch a bare conclusion is beyond meaningful

judicial review."[39]  The court then went on to explain that:

> By the explicit terms of the statute [42 U.S.C. § 405(b)(1)],
> the ALJ was required to discuss the evidence offered in
> support of Audler's claim for disability and to explain why
> she found Audler not to be disabled at that step.  Although
> the ALJ is not always required to do an exhaustive
> point-by-point discussion, in this case, the ALJ offered
> nothing to support her conclusion at this step and because
> she did not, "we, as a reviewing court, simply cannot tell

---

[37]     *Williams v. Astrue*, No. 09-0130, 2010 WL 989216, at * 3 (W.D. La. Mar. 15, 2010),
citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007), which in turn cites 42 U.S.C. § 405(b)(1).

[38]     *Audler v. Astrue*, 501 F.3d at 448.

[39]     *Audler v. Astrue,* 501 F.3d at 448, quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th
Cir. 1996).

whether her decision is based on substantial evidence or not."[40]

In this case, the ALJ did even less than did the ALJ in the *Audler* case.  She abdicated her responsibility and avoided the necessary evaluation by deferring to others.  She stated that "[t]he claimant failed to discharge her [sic] burden of proof at this step."[41]  The evidence in the record does not support that statement.  Mr. Clark complains of a chronic headache as well as chronic neck and back pain. The ALJ did not identify a single listing that might be applicable or compare Mr. Clark's symptoms to the requirements of any listing.  The ALJ apparently overlooked the fact that the amount or type of evidence presented by the claimant does not dictate the method to be used by the ALJ in evaluating the claimant's impairments.

The ALJ also said, "[f]rom the record, it is not apparent that the claimant is disabled."[42]  Making such a broad statement cannot relieve the ALJ of her duty to compare the criteria of relevant listings with the evidence in the record.

The ALJ then attempted to defer to others, stating that she reached her conclusion by considering "the opinions of the examiners with Disability

---

[40]     *Audler v. Astrue*, 501 F.3d at 448, quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986).

[41]     Rec. Doc. 8-1 at 21.

[42]     Rec. Doc. 8-1 at 21.

Determination Services and the claimant's treating sources who evaluated the claimant and reached a similar conclusion."  The record contains no evidence of a comparison by Mr. Clark's treating sources with any listing criteria.  Therefore, the ALJ could not possibly have relied on a treating source's similar conclusion.  The ALJ's reliance on the conclusion of the DDS examiner was also misplaced.  If the conclusions of the DDS examiners were controlling, there would be no need for the ALJ.

Quite simply, the ALJ did not explain what listings she considered or how he reached the conclusion that Mr. Clark does not meet or equal them.  In accordance with the Fifth Circuit's reasoning, the undersigned is unable to determine whether the Commissioner's conclusion at step three is or is not based on substantial evidence.  Therefore, the undersigned recommends that this matter be remanded for a thorough analysis of whether Mr. Clark has an impairment or combination of impairments that meets or medically equals a listed impairment.

## G.   THE ALJ FAILED TO DEVELOP THE RECORD

The Fifth Circuit imposes a duty on the ALJ to fully and fairly develop the facts relative to a claim for benefits.[43]   The Supreme Court has described Social

---

[43]     *Newton v. Apfel*, 209 F.3d at 458; *Ripley v. Chater*, 67 F.3d at 557; *Kane v. Heckler*, 731 F.2d at 1219.

-14-

Security administrative proceedings are "inquisitorial rather than adversarial."[44] Accordingly, "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits. . . ."[45]

The ALJ's obligation to develop a full and fair record rises to a special duty when an unrepresented claimant unfamiliar with the hearing procedure appears before him.[46]  This duty requires the ALJ to scrupulously and conscientiously probe into, inquire about, and explore for all relevant facts.[47]  In this case, Mr. Clark was not represented at the hearing.  Therefore, the ALJ had a heightened duty to assure that she fully developed the record.

When the ALJ fails in his duty to develop the record, he does not have before him sufficient facts on which to make an informed decision, and his decision is not supported by substantial evidence.[48]  However, reversal is appropriate only if the

---

[44]     *Sims v. Apfel*, 530 U .S. 103, 110-11 (2000).

[45]     *Sims v. Apfel*, 530 U .S. at 111.

[46]     *Kane v. Heckler*, 731 F.2d at 1219 (citing *Clark v. Harris*, 638 F.2d 1347, 1351 (5th Cir. 1981)).

[47]     *Kane v. Heckler*, 731 F.2d at 1219-20; *Bowling v. Shalala*, 36 F.3d 431, 437 (5th Cir. 1994).

[48]     *Kane v. Heckler*, 731 F.2d at 1219; *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996).

claimant shows that he was prejudiced as a result of the insufficient record.[49]  "A mere allegation that additional beneficial evidence might have been gathered had the error not occurred is insufficient to meet this burden."[50]  "To establish prejudice, a claimant must show that he 'could and would have adduced evidence that might have altered the result.' "[51]  Stated another way, a claimant demonstrates prejudice when he shows "that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision.'"[52]

### (1)   FAILURE TO DEVELOP THE RECORD REGARDING THE ALLEGED PRIOR ADJUDICATION

When requesting a hearing, Mr. Clark stated:  "I was disabled last year but was unable to collect and was not told of any termination date."[53]  At the hearing, Mr. Clark advised the ALJ that he had previously been found to be disabled but was unable to collect SSI benefits because of income from his father's mesothelioma case. The following exchange occurred:

---

[49]     *Kane v. Heckler*, 731 F.2d at 1220; *Bowling v. Shalala*, 36 F.3d at 437; *Brock v. Chater*, 84 F.3d at 728.

[50]     *Jones v. Astrue*, 691 F.3d 730, 735 (5th Cir. 2012).

[51]     *Brock v. Chater*, 84 F.3d at 728 (quoting *Kane v. Heckler*, 731 F.2d at 1220).

[52]     *Newton v. Apfel*, 209 F.3d at 458 (quoting *Ripley v. Chater*, 67 F.3d at 557 n. 22).

[53]     Rec. Doc. 8-1 at 43.

ALJ:        Were you in pay status before?  Did you have
            a case that was approved in the past?

CLMT:[54]   Yes, ma'am.    Yeah.    It was in, it was
            approved in May of 2011.  I didn't, I didn't
            collect benefits because I was receiving
            settlement  payments  from  my  father's
            Mesothelioma case.  And so because I was
            getting funds in from that, I wasn't eligible to
            receive the payments, and, but I did tell them
            that it wasn't going to last for a long time.
            And into 2012, by around, well, I waited until
            June and I wasn't receiving anything in and I
            didn't know of anything else.  So I went back
            to Social Security to ask if they would renew
            the benefits.  But that's when they told me
            that after a year, which would have been in
            May, my case was terminated, would have
            been terminated.   And I didn't know that
            because no one informed me of that.  They
            just told me that they would monitor my
            account.  And so once I learned that they said
            I wasn't eligible anymore so I had to go
            through the whole process again and that's
            when I started.

ALJ:        And what was the basis of the decision in
            2011?  You were approved based on what
            condition?  Do you know?

CLMT:       I still have the papers with me.  I'm not sure
            if it's – it said fully favorable so I don't know
            if that means anything.

---

[54]    This abbreviation is understood to mean "claimant."

ALJ:         I'll research it.[55]

Although the ALJ assured Mr. Clark that she would research his contention that he had previously been found disabled but a lack of information or miscommunication from the Social Security Administration concerning a deadline to seek the commencement of SSI benefits had precluded his receipt of benefits, there is no evidence in the record that the ALJ actually did research this issue.  This was error.

Furthermore, it was a critically important error.  Although the Fifth Circuit has not yet directly addressed the issue of *res judicata* as it applies to disability determinations, district courts in the circuit have found cases from other circuits persuasive and have applied *res judicata* under certain circumstances.  Under 42 U.S.C. § 405(h), finality is given to findings, as well as decisions, made in previous proceedings between the parties.  Additionally, "the courts have readily applied res judicata to prevent the Commissioner from reaching an inconsistent result in a second proceeding based on evidence that has already been weighed in a claimant's favor in an earlier proceeding."[56]   Therefore, in the context of Social Security cases, *res*

---

[55]       Rec. Doc. 8-1 at 75-76.

[56]       *Gobert v. Astrue*, No. 2:12-CV-02103, 2014 WL 31254, at *9 (W.D. La. Jan. 3, 2014) (quoting *Lively v. Secretary of Health and Human Services*, 820 F.2d 1391, 1392 (4th Cir. 1987)).

*judicata* applies when there has been a "previous determination or decision. . . about [the claimant's] rights on the same facts and on the same issue or issues, and this previous determination has become final by either administrative or judicial action."[57]

In *Lively v. Secretary of Health & Human Servs.*, the court concluded that administrative *res judicata* barred the Commissioner from finding that a claimant's residual functional capacity for exertional work was greater than had been determined for that claimant in a previous application for benefits.  The court concluded that the Commissioner was bound by the first ALJ's findings because the record lacked evidence that the claimant's condition had improved between the first adjudication and the second.  The court said:

> Principles of finality and fundamental fairness drawn from § 405(h). . . indicate that the [Commissioner] must shoulder the burden of demonstrating that the claimant's condition had improved sufficiently to indicate that the claimant was capable of performing medium work. [T]here was no evidence of any such miraculous improvement, and . . . such evidence, not considered in the earlier proceeding, would be needed as an independent basis to sustain a finding contrary to the final earlier finding.[58]

---

[57]   20 C.F.R. § 416 .1457(c)(1).

[58]   *Lively v. Secretary of Health & Human Servs.*, 820 F.2d at 1392.

-19-

Thus, "[u]nder those circumstances, principles of fairness and finality vitiated against a different finding."[59]  Finding *Lively* persuasive, the court in *Shelton v. Astrue* held that the Commissioner was required to honor previous decisions finding the claimant being limited to sedentary work and further found that "principles of res judicata precluded a complete, adjudicative do-over."[60]   The undersigned is similarly convinced that if, in fact, Mr. Clark was previously found to be disabled, that determination cannot now be reversed, particularly on a record like the one in this case, which is devoid of medical evidence related to the original determination.

The ALJ erred in failing to develop the record by researching whether Mr. Clark had, in fact, previously been determined to be disabled.  Mr. Clark was not represented by counsel, and it is easy to understand that he would have expected the ALJ to have access to the previous ruling and the evidence that supported the previous ruling.  The ALJ erred in failing to research the prior proceedings and in failing to discuss the prior determination in her decision.

---

[59]     *Shelton v. Astrue*, No. 1:08-CV-403, 2011 WL 1234910, at *9 (E.D. Tex. Jan. 31, 2011), report and recommendation adopted, No. 1:08-CV-403, 2011 WL 1191946 (E.D. Tex. Mar. 30, 2011),

[60]     *Shelton v. Astrue*, 2011 WL 1234910, at *10.

### (2)   FAILURE TO DEVELOP THE RECORD REGARDING CLAIMED IMPAIRMENTS

In addition to failing to develop the record regarding the alleged prior disability adjudication, the ALJ also failed to develop the record regarding Mr. Clark's alleged impairments.  The ALJ's duty to fully and fairly develop the facts relevant to a claim for benefits includes a specific responsibility to develop a complete medical history for the relevant period.[61]   In this case, Mr. Clark alleges a disability onset date in 2001.[62]  But the record contains no treatment notes or other medical records related to his original accident, his subsequent alleged injury during the FCE, or his neck surgery.  The record does contain a list of health care providers including Dr. David Muldowny, Dr. Stuart Begnaud, Dr. Alfred E. Buxton, Dr. Harold Granger, Louisiana Rehab Service, Dr. David Heinen, Dr. Michael Jennings, Dr. Stephen Snatic, and LSU University Medical Center.[63]  For each of these, the record includes a notation "evid[ence] too old – not relevant."[64]

---

[61]      Citing 20 C.F.R. § 416.912(d).

[62]      The summary of Mr. Clark's application for benefits indicates that he alleges a disability onset date of January 1, 2001 (Rec. Doc. 8-1 at 89) while the ALJ's decision indicates an alleged disability onset date of October 15, 2001 (Rec. Doc. 8-1 at 18).  This discrepancy is not explained in the record.

[63]      Rec. Doc. 8-1 at 233.

[64]      Rec. Doc. 8-1 at 233-234.

The only medical records contained in the record are from Dr. Rick Matis and chiropractor Dr. John J. Sullivan.  Dr. Matis treated Mr. Clark in 2011for a sinus condition.  His notes indicate that Mr. Clark had ongoing complaints of headache and neck pain, a history of migraine headaches, and a prior neck surgery.[65]  Dr. Sullivan treated Mr. Clark in 2011, 2012, and 2013 for complaints of pain in his neck, upper back, legs, and feet as well as headache complaints.[66]  The ALJ secured a consultative examination of Mr. Clark by Dr. Scott C. Chapman.[67]  There is no indication that Dr. Chapman is a specialist in the fields of orthopedics, neurology, or internal medicine. Dr. Chapman articulated the history provided by Mr. Clark as follows:

> The patient's spine problems began when he was involved in a motor vehicle accident in November of 1999.  He had several epidural steroid injections which provided little improvement in his symptoms.  He was then sent to physical therapy with some improvement in his symptoms. However, he still has significant low back pain with bilateral leg pain and off and on numbness.  His neck problems began when he had an FCE in December of 2001. He was doing one of the lifting exercises and began having a significant headache.  He was evaluated and found to have a herniated disc in the cervical spine.  In December of 2002 he had a mechanical fusion of the cervical spine which did not improve his symptoms.  Since that time he has had chronic headaches and neck pain.

---

[65]     Rec. Doc. 8-1 at 158-160.

[66]     Rec. Doc. 8-1 at 173-222, 241-245.

[67]     Dr. Chapman's report is in the record at Rec. Doc. 8-1 at 226-232.

Upon examination, Dr. Chapman found that Mr. Clark had a "painful cervical range of motion" and  "tenderness to palpation and spasm over the bilateral trapezius muscles."  Still, Dr. Chapman found Mr. Clark to have a range of motion within normal limits in all joints and "5/5 strength throughout."  X-rays showed an anterior cervical fixation plate at the C5 through C7 levels as well as mild dextroscoliosis with moderate, diffuse spondylosis in the lumbar spine.  Dr. Chapman's impression was chronic lumbar and cervical spine pain.  He stated that Mr. Clark "will have significantly reduced physical capabilities secondary to the damage in his lumbar and cervical spine."  The ALJ claims to have taken this into account when determining Mr. Clark's residual functional capacity.[68]

Even though Mr. Clark identified several health care providers who may have treated him at the time that his disability allegedly began, a decision was made not to obtain or consider the records from those providers.  The ALJ knew that the alleged disability onset date was in 2001, and she knew that Mr. Clark allegedly already had a disability adjudication.  But she ignored those facts and relied upon very recent records from just two health care providers, neither of whom were treating Mr. Clark at the time of the alleged onset of his disability.  Although the records that were not obtained are older than those seen in a typical Social Security disability case, Mr.

---

[68]    Rec. Doc. 8-1 at 23.

Clark is alleging an onset date of fourteen years ago.  Records from these doctors and
health care providers are relevant to this case despite their age.  For example, the ALJ
concluded that "the claimant is not impaired with headaches,"[69] after noting that
"there are no records from a health care provider indicating the claimant is or has
been treated for headaches."[70]  Mr. Clark testified that he underwent neck surgery due
to the headache that started on the day that an FCE showed that he could not perform
his past relevant work,[71] but the ALJ did not obtain the records from any doctors who
treated him at that time.  Therefore, even if Mr. Clark had not alleged that he had
previously been found disabled and the application being considered was Mr. Clark's
only application for Social Security benefits, the ALJ would have erred in failing to
fully and completely develop the record by not obtaining the older records.

Even if there was no prior disability determination or the prior determination
related to a different time period than that for which a determination is sought in Mr.
Clark's instant application for SSI benefits, the ALJ erred in failing to develop the
record by precluding the gathering and consideration of medical records from the
physicians who treated Mr. Clark with regard to the conditions that he claims are

---

[69]     Rec. Doc. 8-1 at 23.

[70]     Rec. Doc. 8-1 at 23.

[71]     Rec. Doc. 8-1 at 78, 85, 226; Rec. Doc. 11 at 3.

disabling.  Mr. Clark alleges a disability onset date in 2001, and any and all medical

records from that time period and after are relevant and should have been considered.

### (3)   FAILURE TO DEVELOP THE RECORD CONCERNING QUALIFICATIONS FOR SSI BENEFITS

Finally, the ALJ erred in failing to develop the record with regard to whether

Mr. Clark was given erroneous information with regard to the qualifications for the

commencement of SSI benefits.  Not before the court at this time is the issue of

whether the prior adjudication of Mr. Clark's SSI application – if, in fact, such an

application was actually filed – can or should be reopened.[72]  Should it be determined

that Mr. Clark was given no information or inaccurate information concerning the

deadline for seeking to have his earlier application for SSI benefits placed in pay

status, however, that issue will likely need to be resolved.

### (4)   PREJUDICE

The undersigned finds that Mr. Clark has demonstrated that he was prejudiced

by the ALJ's failure to fully and completely develop the record.  If the ALJ had

developed the record, the additional evidence – either in the form of a prior disability

---

[72]     20 C.F.R. § 404.988(b); 20 C.F.R. § 416.1488(b); *Cieutat v. Bowen*, 824 F.2d 348, 353 n. 5 (5th Cir. 1987); *Cole ex rel. Cole v. Barnhart*, 288 F.3d 149, 150 (5th Cir. 2002) ("Social security regulations allow a decision to be reopened for good cause if done within two years of the initial determination on an SSI application and within four years of the initial determination on a DIB application.").

determination or in the form of medical records concerning Mr. Clark's impairments – might have led to a different decision.  As it exists now, the record is devoid of information concerning the prior adjudication, devoid of any indication that the ALJ attempted to investigate Mr. Clark's claim of a prior adjudication or to associate his earlier claim with this one, and devoid of any information concerning communication between the Social Security Administration and Mr. Clark with regard to the date on which he was eligible to begin receiving SSI benefits if, in fact, he was previously determined to be disabled.  The ALJ represented to Mr. Clark at the hearing that she would research his alleged prior adjudication, but there is no evidence that she actually did so.  Mr. Clark was prejudiced by this omission.

The record is also devoid of records related to testing, diagnosis, and treatment of the conditions that Mr. Clark contends led to his inability to work, starting in 2001, other than those very recent records discussed above.  The older records are essential to developing a full and complete picture of Mr. Clark's alleged impairments.  Mr. Clark relied upon the Social Security Administration to obtain medical records for the pertinent time period, he provided the names of several health care providers, and the ALJ should have developed the record by seeking any and all medical records for the appropriate time period relevant to his determination.  Mr. Clark was prejudiced by this error.

## CONCLUSION AND RECOMMENDATION

The undersigned finds that the ALJ applied inappropriate legal standards in ruling on this case, and the ALJ's findings are not based on substantial evidence in the record.  Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **REVERSED** and **REMANDED** for further administrative action under sentence four of 42 U.S.C. § 405(g).  More specifically, the record should be developed by ascertaining whether Mr. Clark was previously determined to be disabled.  If Mr. Clark was previously determined to be disabled, then a determination should be made concerning whether he is entitled to receive SSI benefits at this time.  If necessary and appropriate, a determination should be made as to whether his prior adjudication should be reopened.  If Mr. Clark was not previously determined to be disabled, then (1) the record should be developed concerning Mr. Clark's claimed impairments by, at a minimum, obtaining treatment notes and other medical records from the health care providers identified by Mr. Clark; (2) a determination should be made as to whether Mr. Clark's impairments satisfy a listing; (3) Mr. Clark's residual functional capacity should be reevaluated; (4) a determination should be made as to whether Mr. Clark can perform his past relevant work; and (5) if Mr. Clark cannot perform his past relevant work, a

determination should be made as to whether there are other jobs available in the economy that Mr. Clark can perform.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 9th day of September 2015.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

-28-

COPY SENT:

DATE: ___9/10/2015_____
BY: _____EFA_____
TO: _____RFD_____
cg